**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Richard LeGrand Gause, | ) | No. CV 12-1439-PHX-RCB (MEA) |
| Plaintiff, | ) ) ) | |
| vs. | ) | **O R D E R** |
| M. Mullen, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

     Plaintiff Richard LeGrand Gause brought this civil rights action under 42 U.S.C. § 1983 against two City of Mesa Police Officers: Michael Mullen and Christopher Beauford (Doc. 13).  Before the Court are (1) Defendants' Motion for Summary Judgment (Doc. 37); (2) Defendants' Motion for Ruling on the Motion for Summary Judgment (Doc. 40); (3) Order to Show Cause directing Plaintiff to pay the civil filing fee (Doc. 41); and (4) Plaintiff's Motion for Time Extension and Counsel (Doc. 43).

     The Court will discharge the Order to Show Cause, deny the Motion for Ruling, and deny Plaintiff's Motion for Time Extension and Counsel.  Defendants' summary judgment motion will be granted, and the action will be terminated.

**I.    Background**

     **A.    First Amended Complaint**

     Plaintiff alleges that Defendants used excessive force during the course of his arrest (Doc. 13).  In his First Amended Complaint, Plaintiff set forth the following facts:

     On the afternoon of March 4, 2012, Mullen stopped Plaintiff for riding his bicycle in

the wrong bike lane (id. at 3).  Mullen stopped his car about 70 feet in front of Plaintiff so as to block the bike lane and then got out of his car and told Plaintiff to stop (id.).  Plaintiff had no brakes on his bicycle; therefore, he attempted to stop by dragging his feet on the ground.  When it became clear that he was going to run into the parked car, Plaintiff swerved to avoid a collision.  Mullen then grabbed him by the throat and slammed him face first into the asphalt, causing Plaintiff's forehead to split open (id.).  Mullen told Plaintiff to stand up, and as he got up, Plaintiff grabbed his head.  When he looked at his hand, it was covered in blood from his forehead (id.).  Then, without provocation, Mullen punched Plaintiff in the face, grabbed Plaintiff's arm, and again slammed him into the asphalt (id.).  Beauford then arrived, jumped on Plaintiff, and drove a knee into the Plaintiff's lower back (id. at 3-3A).

Mullen and Beauford then placed handcuffs on Plaintiff's wrists that were extremely tight and cut off blood flow (id. at 3A).  For an hour, no one would loosen the cuffs (id.).  Plaintiff's requests for medical attention for his hands, head, and back were denied (id.).  Plaintiff was transported to the Mesa Police Department, where the handcuffs were finally removed, and Plaintiff again requested medical care (id.).  He was told that the Mesa Police Department does not provide medical care and he would have to wait until he was transported to the county jail (id.).

Plaintiff states that as a result of Mullen and Beauford's actions, he has severe damage in both hands that causes constant, intense pain and he must wear braces on his hands (id. at 3).  Plaintiff avers that he suffers constant, intense lower back pain, for which he may require surgery, and he must take nerve and pain medications (id. at 3, 3C).  He further avers that he has reduced mobility, cannot stand or sit for long periods or use his hands for tasks, and he cannot lift heavy objects without blinding pain in his back and hands (id. at 3C).

**B.    Procedural History**

Defendants moved for summary judgment on the grounds that Plaintiff's claim is barred under Heck v. Humphrey, 512 U.S. 477 (1994), and there is no evidence of excessive force by Defendants (Doc. 37).  The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Plaintiff of the requirements

1 under Federal Rule of Civil Procedure 56 and the Local Rules governing summary judgment

2 (Doc. 39).  After Plaintiff failed to file a response, Defendants filed a Motion for Ruling on

3 their summary judgment motion (Doc. 40).

4     Because Plaintiff had filed a Notice of Change of Address indicating his release from

5 custody (Doc. 35), before addressing Defendants' motions, the Court issued an Order to

6 Show Cause directing Plaintiff to either pay the $350 filing fee or file a response showing

7 good cause why he cannot pay it (Doc. 41).  On August 21, 2013, the Court received

8 Plaintiff's Notice of Change of Address and a Motion for Time Extension and Counsel (Doc.

9 43).

10 **II.     Order to Show Cause Discharged**

11     In his Motion for Time Extension and Counsel, Plaintiff states that in April 2013, he

12 was in a serious motorcycle accident that resulted in severe head trauma, bleeding on the

13 brain, swelling of the brain, and multiple facial fractures (id. at 1).  Plaintiff avers that he

14 woke up the day after the accident on life-support at the Scottsdale Trauma Center (id.).  He

15 also avers that he continues to suffer brain damage, memory loss, and seizures (id. at 2).

16     The Court will liberally construe this portion of Plaintiff's motion as a response to the

17 Order to Show Cause to the extent that it demonstrates his failure—due to his medical

18 condition—to pay the filing fee.  Moreover, Plaintiff's Notice of Change of Address

19 indicates that Plaintiff is now back at the county jail (Doc. 42).  The Order to Show Cause

20 will therefore be discharged.

21 **III.    Plaintiff's Motion for Time Extension and Counsel**

22     Plaintiff seeks an extension of all deadlines and forgiveness of any missed deadlines

23 going back to April 25, 2013, the date of his motorcycle accident (Doc. 43).  One of the

24 missed deadlines was the June 9, 2013 date for Plaintiff to file his response to Defendants'

25 Motion for Summary Judgment (Doc. 39).

26     Excusable neglect is the standard that must be met to warrant an extension of an

27 expired deadline. Fed. R. Civ. P. 6(b)(1)(B) (time may be extended "on motion made after

28 the time has expired if the party failed to act because of excusable neglect").  Rule 6(b)(1)(B)

1   provides that a district court may, in its discretion, set a new deadline if the failure meet the

2   original deadline was the result of excusable neglect.  Pioneer Inv. Servs. Co. v. Brunswick

3   Ass'n Ltd. P'ship, 507 U.S. 380, 395 (1993).  An excusable neglect determination "is at

4   bottom an equitable one, taking into account all of the relevant circumstances surrounding

5   the party's omission[,]" including (1) the danger of prejudice to the other party, (2) the length

6   of delay and its potential impact on judicial proceedings, (3) the reason for the delay, and (4)

7   whether the party acted in good faith.  Id.[1]  A district court abuses its discretion if it does not

8   consider each of the four Pioneer factors separately.  See Ahanchian v. Xenon Pictures, Inc.,

9   624 F.3d 1253, 1261 (9th Cir. 2010); Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1224 (9th

10  Cir. 2000).

11      Extending the deadline for Plaintiff to file a response to the summary judgment

12  motion will cause minimal prejudice to Defendants; "[p]rejudice requires greater harm than

13  simply that relief would delay resolution of the case."  Lemoge v. United States, 587 F.3d

14  1188, 1196 (9th Cir. 2009).

15      The length of the delay, however, and the potential impact on the proceedings is more

16  than minimal.  Defendants' summary judgment motion has been pending for over three

17  months, and the deadline for responding expired over two months ago.  Cf. In re Veritas

18  Software Corp. Sec. Litig., 496 F.3d 962, 973 (9th Cir. 2007) (a 15-day delay was "not

19  great"); Bateman, 231 F.3d at 1225 (a one-month delay was "still not long enough to justify

20  denying relief").  Plaintiff now seeks an indefinite extension; thus, it is not clear what the

21  actual delay would ultimately be.

22      Next, the Court considers the reason for delay.  Plaintiff avers that he was in a

23  motorcycle accident in April 2013, and he indicates that he woke up in the hospital (Doc. 43).

24  This is valid justification for delay during the time period surrounding the accident.  But

25  Plaintiff does not explain how long he was hospitalized nor does he present any detailed

26

27      [1]Pioneer involved an analysis of excusable neglect under Bankruptcy Rule 9006(b).
    The Supreme Court found that the Rule was modeled after Federal Rule of Civil Procedure
28  6(b) and therefore applied Rule 6(b) case law in its analysis.  Pioneer, 507 U.S. at 391-92;
    see Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 825 n. 4 (9th Cir. 1996).

information regarding his recovery since the accident.  More importantly, Plaintiff does not state why he was unable to notify the Court of his condition prior to the Order to Show Cause.  The Court notes that the May 9, 2013 <u>Rand</u> Notice sent to Plaintiff was not returned in the mail, and, according to Defendants' Certificates of Service, Plaintiff was sent copies of Defendants' motions in May and June 2013 (Doc. 37 at 8; Doc. 40 at 3).   Despite these notices, Plaintiff failed to contact the Court for over three months.

The last factor is whether Plaintiff acted in good faith.  Absent sufficient information from Plaintiff, the Court cannot assess whether the delay can be attributed to bad faith or has been caused solely by Plaintiff's medical condition.

On balance, the Court finds that Plaintiff has failed to demonstrate excusable neglect to support an extension of the deadline to file a response to the summary judgment motion.

The Court further finds that appointment of counsel is not warranted in this case.  Appointment of counsel is required only when "exceptional circumstances" are present, which is determined by evaluating the likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issue involved.  <u>See</u> <u>Terrell v. Brewer</u>, 935 F.2d 1015, 1017 (9th Cir. 1991).  In considering both elements, it does not appear that exceptional circumstances are present.

For the above reasons, Plaintiff's Motion for Time Extension and Counsel will be denied.

**IV.    Defendants' Motion for Ruling**

Defendants' Motion for Ruling requests that the Court grant their summary judgment motion on the merits, reasserts the summary judgment arguments, and notes Plaintiff's failure to file a response (Doc. 40).

Plaintiff's failure to respond to the summary judgment motion does not, by itself, warrant a ruling in Defendants' favor.  <u>See</u> <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (if the party moving for summary judgment fails to satisfy its initial burden, the nonmovant need not produce anything); <u>High Tech Gays v. Defense Indus. Sec. Clearance Office</u>, 895 F.2d 563, 574 (9th Cir. 1990) (at summary

judgment, "no defense to an insufficient showing is required"). Defendants' Motion for Ruling appears to be a reply in support of their summary judgment motion. No reply was necessary, and this Order moots a request to rule on the summary judgment motion. The Motion for Ruling will be denied.

**V.   Defendants' Motion for Summary Judgment**

   **A.   Governing Standard**

   A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

   If the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P. 56(c)(1).

   At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

1    Although Plaintiff did not file a response to Defendants' motion, in its analysis, the

2  Court must construe Plaintiff's verified First Amended Complaint as an affidavit in

3  opposition to summary judgment (see Doc. 13).  See Jones v. Blanas, 393 F.3d 918, 923 (9th

4  Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as

5  evidence in opposition to summary judgment); Schroeder v. McDonald, 55 F.3d 454, 460

6  (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment

7  if it is based on personal knowledge and sets forth specific facts admissible in evidence).

8  **B.    Factual Assertions**

9    In support of their motion, Defendants submit a separate Statement of Facts (DSOF),

10 which is supported by Defendants' affidavits; the affidavit of Rhoda Williams-Alexander,

11 Maricopa County Probation Officer; the affidavit of Dan Padia, Mesa Police Department

12 Detention Shift Supervisor; and copies of Plaintiff's change of plea transcript and the Mesa

13 Police Department booking checklist (Doc. 38, Exs. A-F).

14   Defendants assert the following relevant facts:

15   On March 4, 2012, at approximately 4:00 p.m., Mullen attempted to conduct a traffic

16 stop on Plaintiff, who was riding his bicycle near Mesa Drive and 2nd Avenue in Mesa,

17 Arizona (DSOF ¶ 1).  Mullen used his marked squad car to block the bicycle lane in which

18 Plaintiff was traveling, and he activated the car's emergency lights (id. ¶ 2).  Mullen, who

19 was wearing his police uniform with Mesa Police Department shoulder patches and a badge,

20 exited his car and told Plaintiff to stop (id. ¶ 3).

21   Plaintiff did not stop, and Mullen was forced to chase Plaintiff and pull him off of his

22 bicycle (id. ¶ 4).  Plaintiff raised his fist to Mullen while they were standing in close

23 proximity (id. ¶ 5).  Mullen feared that Plaintiff was going to punch him, and he attempted

24 to effect Plaintiff's arrest for aggravated assault on an officer by grabbing Plaintiff's arms

25 and performing a side-cast take down by using his grip on Plaintiff's arms to throw Plaintiff

26 to the ground (id. ¶¶ 6-7).  Plaintiff resisted on the ground as Mullen tried to effect the arrest,

27 so Mullen pinned Plaintiff to the ground with his body weight and attempted to secure

28 Plaintiff's hands in handcuffs (id. ¶¶ 8-9).  Plaintiff kept his other arm under his body, and

1   Mullen remained on top of Plaintiff for approximately 20 additional seconds until Beauford
2   arrived (id. ¶ 10).

3         As Beauford approached the scene, he heard Plaintiff yelling and saw Plaintiff using
4   his arm underneath his body to push off of the ground as Mullen was lying on top of him (id.
5   ¶ 11).  Beauford, who was also wearing his police uniform, was able to grab Plaintiff's other
6   arm while he continued to resist by trying to keep it under his body; Mullen secured
7   Plaintiff's hands in handcuffs (id. ¶¶ 10, 12).

8         Beauford escorted Plaintiff to the nearby curb where Plaintiff sat and spoke with the
9   officers (id. ¶ 13).  Plaintiff did not complain of any injury or discomfort of any kind relating
10  to the handcuffs, and Plaintiff's demeanor became much calmer once he was handcuffed (id.
11  ¶ 14).  Beauford transported Plaintiff to the Mesa Police Department's Holding Facility (id.
12  ¶ 15).  At the Holding Facility, Plaintiff indicated to Beauford and Mesa Detention Shift
13  Supervisor Padia that he was not injured (id. ¶ 16).

14        Plaintiff pled guilty in Maricopa County Superior Court to resisting arrest, a class 6
15  felony (id. ¶ 17).  At the change of plea hearing, Plaintiff confirmed that he committed
16  resisting arrest when he intentionally attempted to prevent a known police officer from
17  effecting an arrest by squirming when he was on the ground (id.).

18  **C.  Analysis**

19        "'[A]ll claims that law enforcement officers have used excessive force . . . in the
20  course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed
21  under the Fourth Amendment 'reasonableness' standard.'"  Hooper v. Cnty. of San Diego,
22  629 F.3d 1127, 1133 (9th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).
23  The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts
24  and circumstances confronting them, without regard to their underlying intent or motivation."
25  Graham, 490 U.S. at 397 (citations omitted).  But if Plaintiff's excessive-force claim is
26  barred under Heck, as Defendants argue, it would be premature to address whether
27  Defendants' actions were objectively reasonable.  Therefore, the Court will first address
28  Defendants' argument that Heck bars Plaintiff's civil rights action against them.

1

### 1. **Heck** Bar

2      To recover damages for harm caused by actions whose unlawfulness would render a

3  conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence

4  has been reversed on direct appeal, expunged by executive order, declared invalid by a state

5  tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.

6  Heck, 512 U.S. at 486-87.  If the conviction or sentence arises out of the same facts that

7  underlie the alleged unlawful behavior for which damages are sought, the § 1983 suit must

8  be dismissed.  Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996).  Therefore, a district

9  court must consider whether a judgment in favor of the plaintiff would necessarily imply the

10  invalidity of his conviction or sentence; if so, the complaint must be dismissed.  Heck, 512

11  U.S. at 487.

12      As noted by Defendants, the Ninth Circuit has addressed the circumstances under

13  which Heck bars excessive force claims arising out of an incident in which the plaintiff was

14  convicted of resisting arrest (Doc. 27 at 4-5).  See Smith v. City of Hemet, 394 F.3d 689, 693

15  (9th Cir. 2005).  In Smith, the appellate court explained that an essential element of a

16  conviction for resisting a peace officer pursuant to California law is that the police officer

17  was "engaged in the performance of his official duties."  Id. at 695.  Under California law,

18  this means that the police officer was engaged in "lawful" conduct, including not using

19  excessive force.  See id. at 695-96 (citing California state court decisions).  Thus, if a

20  plaintiff was convicted for resisting a police officer during the course of an arrest, his

21  subsequent § 1983 claim that the police officer used excessive force during the course of that

22  arrest would, if successful, necessarily undermine the conviction.  Id. at 697-98.  In such

23  circumstances, the Heck bar applies.  Id.

24      Although Plaintiff's conviction was under Arizona law rather than California law, this

25  makes no difference for the present analysis.  A defendant can only be convicted of resisting

26  arrest in Arizona if the officer's conduct was "lawful" when effecting the arrest; an officer's

27  conduct was not "lawful" if he used excessive force.  See Ariz. Rev. Stat. § 13-404(B)(2) (a

28  person may not use physical force to resist arrest by an officer unless the physical force used

1   by the officer exceeds that allowed by law); State v. Fontes, 986 P.2d 897, 901 (Ariz. Ct.

2   App.1998) (if the force used to make the arrest is reasonable, the defendant is not justified

3   in using physical force to resist the arrest).

4         Here, the record shows that Plaintiff was convicted of resisting arrest, and that this

5   conviction has not been expunged, reversed, invalidated or otherwise called into question

6   (Doc. 13 at 3B-3C; Doc. 38, DSOF ¶ 17). The question in this case is whether the Smith

7   analysis applies. Smith drew a distinction between a plaintiff who resists officers before they

8   use force and a plaintiff who resists during the course of the arrest and accompanying

9   application of force. 394 F.3d at 697-98. The Court identified different "phases" of the

10  encounter between the plaintiff and the officers and held that if Smith's conviction was for

11  resisting the officers during the "investigative phase," i.e., before the officers had begun to

12  arrest and use force against him, then Heck did not bar his claims and the force was

13  excessive. Id. at 698. But if Smith's conviction was for resisting the officers while they

14  were effecting arrest and using purportedly excessive force, then Heck did bar his claims that

15  the officers used excessive force. Id. at 698-99.

16        Plaintiff describes multiple uses of force that he claims were excessive: (1) when

17  Mullen "grabbed [Plaintiff] by the throat and slammed [him] face first into the asphalt[,]"

18  thereby taking Plaintiff off his bicycle; (2) when, after Plaintiff stood up after the fall on the

19  asphalt, Mullen punched Plaintiff in the face without provocation and then grabbed

20  Plaintiff's arm and slammed his back onto the asphalt; (3) when Plaintiff was on the ground

21  squirming in pain and Beauford slammed his knee into Plaintiff's lower back; and (4) when

22  the both officers handcuffed Plaintiff so tightly that it cut off blood flow and no one would

23  loosen his cuffs for an hour (Doc. 13 at 3-3A).

24        Defendants submit the transcript of Plaintiff's change of plea hearing, which reflects

25  that his resisting arrest conviction arose specifically when he was squirming on the ground

26  when Mullen and Beauford were attempting to effect an arrest and place handcuffs on him:

27        [Plaintiff's attorney]: . . . [Plaintiff] committed Resisting Arrest when he
          intentionally attempted to prevent a person reasonably known to him, an
28        officer, acting in a such color of his authority from effecting an arrest by
          squirming when he was on the ground.

1

The Court: And the officer was attempting to handcuff him or take him into custody?

2

3

[Plaintiff's attorney]: The officer was attempting to effect arrest and [Plaintiff] was squirming.

4

. . .

5

The Court: [State's attorney], any additions or corrections?

6

[State's attorney]: No, thank you, Your Honor.

7

(Doc. 38, Ex. C, Hr'g Tr. 9:9-10:1 June 19, 2012.)

8            The Court finds that if Plaintiff was successful on his § 1983 claim that Defendants

9   used excessive force and Beauford slammed his knee into Plaintiff's back when he was on

10  the ground and they were trying to handcuff him, it would necessarily undermine his

11  conviction for resisting arrest.  Accordingly, this portion of Plaintiff's excessive-force claim

12  is Heck-barred.

13            Because Plaintiff's resisting arrest conviction was limited solely to the time

14  period—or "phase"—when he was on the ground and both Mullen and Beauford were

15  attempting to handcuff and arrest him, the claims of excessive force used prior to that phase

16  and after (tight handcuffs) are not subject to the Heck bar.

17                          **2.  Graham Objective Reasonableness**

18            Accordingly, Plaintiff's remaining excessive-force claims must be examined under

19  the objective-reasonableness standard established in Graham.  The objective-reasonableness

20  inquiry is a three-step analysis.  Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003).

21  First, the court must evaluate the type and amount of force used.  Next, it must assess the

22  importance of the governmental interests at stake by considering the factors set out in

23  Graham—the severity of the crime, whether the suspect poses an immediate threat to the

24  safety of the officers or others, and whether he is actively resisting arrest or attempting to

25  evade arrest. Finally, the court must balance the "gravity of the intrusion on the individual

26  against the government's need for the intrusion . . . ."  Miller, 340 F.3d at 964.  The need for

27  force is at the heart of Graham.  Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th

28  Cir. 2003) (citation omitted).  Where there is no need for force, any forced used is excessive.

1    Headwaters Forest Def. v. Cnty. of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000), vacated
2    and remanded on other grounds, Cnty. of Humboldt v. Headwaters Forest Def., 534 U.S. 801
3    (2001).

4             The Supreme Court has clarified the summary-judgment standard for excessive-force
5    claims, rejecting the argument that the question of objective reasonableness is "a question
6    of fact best reserved for a jury."  Scott v. Harris, 550 U.S. 372, 381, n. 8 (2007).  "At the
7    summary judgment stage . . . once we have determined the relevant set of facts and drawn
8    all inferences in favor of the nonmoving party to the extent supportable by the record . . . the
9    reasonableness of [the defendant's] actions . . . is a pure question of law."  Id.; see also
10   Marvin v. City of Taylor, 509 F.3d 234, 244 (6th Cir. 2007).

11                          **a. Mullen's Initial Use of Force**

12            According to Plaintiff's facts, the first use of force alleged to be excessive was when
13   he was still on his bicycle and Mullen grabbed him by the throat and slammed his face in to
14   the asphalt (Doc. 13 at 3).  Plaintiff submits that the his forehead was split open as a result
15   and he suffered extreme pain and dizziness (id.).  This does not amount to deadly force;
16   however, it is more than insignificant.

17            As to the governmental interest at stake, there is no dispute that Mullen sought to stop
18   Plaintiff for a traffic violation (id.; Doc. 38, DSOF ¶ 1).  "As a general matter, the decision
19   to stop an automobile is reasonable where the police have probable cause to believe that a
20   traffic violation has occurred."  Whren v. United States, 517 U.S. 806, 810 (1996).  A traffic
21   violation committed by a bicycle rider does not rise to a serious threat but there was probable
22   cause for a stop.  The Court must consider whether Plaintiff was attempting to evade arrest,
23   and the undisputed facts show that Mullen told Plaintiff to stop but Plaintiff did not stop
24   (Doc. 13 at 3).  There is no indication that Mullen would have known the reason for
25   Plaintiff's failure to stop—that his bicycle had no brakes.  For example, Plaintiff does not
26   allege that he yelled to Mullen that he had no brakes and was trying to stop.  And the record
27   is clear that Mullen's use of force was for the purpose of stopping Plaintiff (Doc. 13 at 3;
28   Doc. 38, DSOF ¶ 4).

1   On balance, given the interest in stopping Plaintiff for a traffic violation and Plaintiff's

2   failure to stop his bicycle, there is no material factual dispute that Mullen's use of force was

3   objectively reasonable in the circumstances.   Summary judgment as to this portion of

4   Plaintiff's excessive-force claim will be granted.

5                     **b.  Mullen's Punch and Take Down of Plaintiff**

6   Plaintiff avers that after getting up off the ground, he looked at his hand to see that it

7   was covered in blood from the wound on his forehead, at which point Mullen punched him

8   and took him to the ground (Doc. 13 at 3).   Mullen avers that after Plaintiff got up, he raised

9   his fist to Mullen, which caused Mullen to believe that Plaintiff was going to punch him and,

10   therefore, Mullen took Plaintiff down to the ground (Doc. 38, Ex. A, Mullen Aff. ¶ 6).

11   A single punch and a takedown do not rise to deadly force; however, like the

12   takedown off of the bicycle, this amount of force is more than insignificant and can result in

13   serious injury.   There is no dispute, however, that prior to the punch and takedown, Plaintiff

14   raised his hand as he stood in front of Mullen.   Even if Plaintiff was only looking at the blood

15   on his hands, it was not unreasonable for Mullen to view this action as a threat and to believe

16   that Plaintiff was about to throw a punch.   Further, this potentially threatening action

17   followed what appeared to be Plaintiff's refusal to stop his bicycle and Mullen first use of

18   force against Plaintiff, for which Mullen could reasonably believe Plaintiff might react with

19   some force.

20   In balancing the force used against the government's interest, the determination "must

21   be judged from the perspective of a reasonable officer on the scene, rather than with the

22   20/20 vision of hindsight. . . .   The calculus of reasonableness must embody allowance for

23   the fact that police officers are often forced to make split-second judgments—in

24   circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that

25   is necessary in a particular situation."   <u>Graham</u>, 490 U.S. at 396-97.   Thus, although Mullen's

26   use of force was, in hindsight, not required, given the threat he reasonably perceived from

27   Plaintiff's actions, the force used was objectively reasonable in the circumstances.   Summary

28   judgment on this portion of Plaintiff's claim will be granted.

1

### c. Tight Handcuffing

2    "It is well-established that overly tight handcuffing can constitute excessive force."

3    Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004).  A plaintiff alleging an

4    excessive force claim bears the burden of "providing specific facts to show that the force

5    used was unreasonable or that [the plaintiff] sustained actual injuries," and "conclusory

6    allegations unsupported by factual data are insufficient to defeat [a] summary judgment

7    motion."  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001).

8    The Ninth Circuit has held that tight handcuffing constitutes a Fourth Amendment violation

9    where plaintiffs were demonstrably injured or where their complaints about too-tight

10   handcuffs were ignored.  See Wall, 364 F.3d at 1109-12 (doctor testified arrestee suffered

11   nerve damage); LaLonde v. County of Riverside, 204 F.3d 947, 952, 960 (9th Cir. 2000)

12   (arrestee complained to officer who refused to loosen handcuffs); Palmer v. Sanderson, 9

13   F.3d 1433, 1434-36 (9th Cir. 1993)(arrestee's wrists were discolored and officer ignored his

14   complaint).

15        Defendants submit sworn statements stating that they did not hear Plaintiff complain

16   that his handcuffs were too tight (Doc. 38, Ex. A, Mullen Aff. ¶ 17; Ex. D, Beauford Aff.

17   ¶ 10). They also present a copy of the jail booking sheet, which reflects that when Plaintiff

18   was asked at booking whether he was injured, he answered "no" (id., Ex. F).  Plaintiff alleges

19   that after Defendants placed extremely tight handcuffs on him, "for approx[imately] 1 hour

20   no cop would loosen my cuffs" (Doc. 13 at 3A).  Plaintiff also states that he repeatedly asked

21   for medical attention for his hands, head, and back but Mullen told him to "quit being a

22   baby" (id.).  Plaintiff avers that Beauford transported Plaintiff to the Mesa Police Department

23   and then removed the handcuffs, at which time Plaintiff's hands were "purple looking with

24   large, open wounds" (id.).  Finally, Plaintiff claims that about a month after he arrived at the

25   jail, a physician diagnosed him with handcuff neuropathy (id. at 3A-3B).

26        Plaintiff fails to identify which officers he asked to loosen his cuffs.  Further, it is not

27   clear from these allegations whether Plaintiff asked Mullen for medical attention due to tight

28   handcuffs or for injuries that may have been sustained prior to and during the course of his

arrest.  See Rizzo v. Goode, 423 U.S. 362, 371-71, 377 (1976) (the plaintiff must show an affirmative link between a specific injury and the specific conduct of a defendant).  In addition, there is no evidence in the record to support Plaintiff's claim of unreasonable injury, such as photographs or medical records.  In short, Plaintiff's only evidence consists of general allegations that are insufficient to demonstrate that Mullen or Beauford ignored complaints that the handcuffs were too tight or that Plaintiff was demonstrably injured. See Arpin, 261 F.3d at 922; see also Celotex, 477 U.S. at 324 (nonmovant must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial") (citation omitted).  Summary judgment is therefore appropriate on the claim concerning tight handcuffing.

In light of the above, the Court will grant Defendants' Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The Order to Show Cause (Doc. 41) is **discharged**.

(2) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 37) and  Motion for Ruling (Doc. 40), and Plaintiff's Motion for Time Extension and Counsel (Doc. 43).

(3) Defendants' Motion for Summary Judgment (Doc. 37) is **granted**.

(4) Defendants' Motion for Ruling (Doc. 40) is **denied**.

(5) Plaintiff's Motion for Time Extension and Counsel (Doc. 43) is **denied**.

(6) The Clerk of Court must enter judgment accordingly and terminate the action.

DATED this 11th day of September, 2013.

_____
Robert C. Broomfield
Senior United States District Judge